UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CV-20455-MOORE/Elfenbein

LORIN GROSSMAN,

      Plaintiff,

v.

B&J SERVICES OF MIAMI, LLC, *et al.*,

      Defendants.

_____/

### REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION TO DETERMINE AND AWARD ATTORNEY'S FEES AND COSTS

**THIS CAUSE** is before the Court on Plaintiff Lorin Grossman's Motion to Determine and Award Attorney's Fees and Costs (the "Motion"), ECF No. [29]. The Honorable K. Michael Moore referred the Motion to me "to take all necessary and proper action as required by law and/or to issue a Report and Recommendation regarding Plaintiff's Motion to Determine and Award Attorney's Fees and Costs." *See* ECF No. [25]. For the reasons explained below, I respectfully **RECOMMEND** that the Motion, **ECF No. [29]**, be **GRANTED**.

### I.    INTRODUCTION

This case arises out of Defendants' discriminatory refusal to show or lease a residential dwelling to Plaintiff Lorin Grossman based on her disability. Plaintiff, who uses a wheelchair and has no use of her legs, sought to view and rent a property located at 315 NW 59th Street, Miami, Florida (the "Property") that Defendant B&J Services of Miami, LLC ("B&J Services") advertised on Facebook Marketplace in January 2024. *See* ECF No. [1] ¶¶9, 16, 18. On January 19, 2024, Plaintiff contacted Defendant Carla Rodas ("Rodas"), B&J Services' leasing agent, expressed

1

interest in renting the Property, and disclosed that she used a wheelchair. *Id.* at ¶¶18–19. Upon learning of Plaintiff's disability, Rodas stated that the Property's stone pathway was not suitable for wheelchairs and — at or around the time of that exchange — cancelled Plaintiff's scheduled showing for January 20, 2024, representing that the current residents would be moving out that day. *Id.* at ¶19. On January 22, 2024, Rodas texted Plaintiff that the Property had already been rented to someone else and reiterated in writing: "As I explained to you, the entrance to the apartment is made of stone and is not suitable for wheelchairs." *Id. at* ¶20. Plaintiff alleges that Defendants' representation that the Property could not be toured on January 20 was false — tours were in fact given to able-bodied prospective tenants that day — and that Defendants entered into a lease with a third party on that date, the very day Plaintiff was supposed to tour. *Id.* at ¶¶21–22.

Plaintiff thereafter filed this action asserting eleven counts against Defendants under the Federal Fair Housing Act, 42 U.S.C. § 3604(a)–(d) and (f)(1), and the Florida Fair Housing Act, Fla. Stat. § 760.23(1)–(4), (7)–(8), all premised on disability-based discrimination in connection with the rental of the Property. *See generally* ECF No. [1]. Plaintiff served Rodas with the Complaint on February 5, 2025, and served B&J Services via substitute service on March 6, 2025. *See* ECF Nos. [7], [14], and [16]. Neither Defendant responded. The Clerk of Court entered default against Rodas on March 4, 2025 and against B&J Services on April 1, 2025. *See* ECF Nos. [9] and [21]. On April 28, 2025, Plaintiff filed a Motion for Entry of Final Default Judgment, seeking $134,000.00 in damages and requesting the Court reserve jurisdiction to award reasonable attorney's fees and costs. *See* ECF No. [24] at 10.

The undersigned thereafter issued a Report and Recommendation recommending that the Court enter final default judgment in Plaintiff's favor on Counts III through XI of the Complaint, award $100,000.00 in punitive damages and $32,200.00 in actual damages, and reserve jurisdiction

to determine and award reasonable attorney's fees and costs. *See* ECF No. [27] at 20–21. On February 9, 2026, Judge Moore adopted the Report and Recommendation in full, entered final default judgment against Defendants on Counts III through XI, and directed Plaintiff to file a supplemental affidavit on the amount of attorney's fees and costs, including all necessary information to support a lodestar analysis with supporting timesheets. *See* ECF No. [28] at 10–11. Having prevailed on default judgment, Plaintiff now seeks to recover the attorney's fees and costs she incurred in connection with this action. *See generally* ECF No. [29].

Plaintiff, through her counsel Nolan Klein, Esq. of the Law Offices of Nolan Klein, P.A., filed the Motion, requesting $20,735.00 in attorney's fees and $533.16 in costs, for a combined total of $21,268.16. *See* ECF No. [29] at 2–3; ECF No. [29-1] at 8. Plaintiff supports the relief requested in the Motion with Mr. Klein's sworn affidavit and detailed timesheets reflecting 37.7 hours of attorney time at a rate of $550 per hour. *See* ECF No. [29-1] at 1–8. Defendants have not responded to the Motion and the time to do so has long expired. The Motion is now ripe for review.

II.     **LEGAL STANDARDS**

   **A. Attorney's Fees Under the Fair Housing Act**

Plaintiff seeks attorney's fees and costs pursuant to 42 U.S.C. § 3613(c)(2) and Florida Statute § 760.35(4). Section 3613(c)(2) provides that "[i]n a civil action under subsection (a), the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee and costs." 42 U.S.C. § 3613(c)(2). Florida Statute § 760.35(4) likewise authorizes an award of "reasonable attorney fees and costs" "[i]f the court finds that a discriminatory housing practice has occurred." Fla. Stat. § 760.35(4). Because the Florida Fair Housing Act "is patterned after the [Fair Housing Act] and courts have recognized that it is to be construed consistently with federal law," *Noah v.*

*Assor*, 379 F. Supp. 3d 1284, 1294 (S.D. Fla. 2019) (quotation marks omitted), the Court applies federal case law to the fee analysis under both provisions. *See Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1285 (11th Cir. 2014) ("The FHA and the Florida Fair Housing Act are substantively identical, and therefore the same legal analysis applies to each.").

A party "prevails" for purposes of these fee-shifting provisions when the court has awarded "some relief" on the merits. *Bhogaita*, 765 F.3d at 1291 (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001)). Once entitlement to fees under the Fair Housing Act is established, the Court determines the amount of the reasonable fee award using the lodestar method, as discussed below.

### B. Lodestar Method

To calculate attorney's fee awards, courts generally use the "lodestar" method. *See Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988); *Inj. Treatment Ctr. Of Ft. Myers, Inc. v. Starr Indem. & Liability Co.,* No. 21-CV-80156, 2022 WL 17325834, at *2 (S.D. Fla. Nov. 4, 2022). "The most useful starting point for determining the amount of a reasonable fee" using the lodestar method "is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *ACLU of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (noting that the lodestar is "properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate" (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984))). "[T]here is a 'strong presumption' that the lodestar is the reasonable sum the attorneys deserve." *See Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th

4

Cir. 2008) (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565–66 (1986)).

"The first step in the computation of the lodestar is determining the reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994). "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Id.* (quoting *Norman*, 836 F.2d at 1299). "The general rule is that the relevant market for purposes of determining the reasonable hourly rate for an attorney's services is the place where the case is filed." *Barnes*, 168 F.3d at 437. "The party seeking attorney's fees bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." *Loranger*, 10 F.3d at 781 (citation and quotation marks omitted). Of course, the court "is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value."[1] *Id.* (quotation marks omitted).

To aid in determining what reasonable hourly rate applies in each case, the Eleventh Circuit has approved of courts considering "the twelve factors discussed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)." *Id.* at 781 n.6; *see also Norman*, 836 F.2d at 1299. "The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of

---

[1] Indeed, where "there is a lack of documentation or testimonial support the court may make the award on its own experience. Where documentation is inadequate, the district court is not relieved of its obligation to award a reasonable fee, but the district court traditionally has had the power to make such an award without the need of further pleadings or an evidentiary hearing. Likewise, no additional evidentiary hearing or pleadings are required where fee counsel fails to provide evidence on some factor which it contends the court ought to take into account. It is perfectly proper to award attorney's fees based solely on affidavits in the record." *Norman*, 836 F.2d at 1303 (footnote and citations omitted).

employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Hensley*, 461 U.S. at 430 n.3.

"The next step in the computation of the lodestar is the ascertainment of reasonable hours." *Norman*, 836 F.2d at 1301. "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434. "In other words, the Supreme Court requires fee applicants to exercise 'billing judgment.'" *Norman*, 836 F.2d at 1301 (quoting *Hensley*, 461 U.S. at 437). "This must necessarily mean that the hours excluded are those that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel. If it were otherwise, an inexperienced or unskillful attorney would face a double penalty. First, his hourly rate would be lowered and second, his time reduced." *Id.* (emphasis and citation omitted).

The "district court is charged with deducting for redundant hours. Redundant hours generally occur where more than one attorney represents a client. There is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Id.* at 1301–02. The "district court must deduct time spent on discrete and unsuccessful claims." *Id.* at 1302. "When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins*, 548 F.3d at 1350; *see also*

*Hensley*, 461 U.S. at 436–37 ("There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.").

As noted above, the "product" of the reasonable hourly rate and the number of hours reasonably expended on the litigation "is the lodestar." *See Bivins*, 548 F.3d at 1350. After determining the lodestar amount, courts can "adjust the fee upward or downward, including [by considering] the important factor of the results obtained." *Hensley*, 461 U.S. at 434 (quotation marks omitted). "If the result was excellent, then the court should compensate for all hours reasonably expended." *Norman*, 836 F.2d at 1302. "If the result was partial or limited success, then the lodestar must be reduced to an amount that is not excessive." *Id.*; *see also Bivins*, 548 F.3d at 1350–51 ("When the number of compensable hours and the hourly rate are reasonable, a downward adjustment to the lodestar is merited only if the prevailing party was partially successful in its efforts."). "A reduction is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Norman*, 836 F.2d at 1302. "Where all theories derive from a common core of operative facts, the focus should be on the significance of overall results as a function of total reasonable hours. It is improper to make the reduction based on a simple ratio of successful issues to issues raised." *Id.* (citation omitted).

"[T]he determination of fees should not result in a second major litigation." *Fox v. Vice*, 563 U.S. 826, 838 (2011) (quotation marks omitted). "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.* Whatever the court decides, it must "provide a concise but clear explanation of its reasons for the fee award. When an adjustment is requested on the basis of either the

exceptional or limited nature of the relief obtained by the plaintiff, the district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained." *Hensley*, 461 U.S. at 437.

## III.   DISCUSSION

### A.   Entitlement to Attorney's Fees

Plaintiff is a prevailing party. On February 9, 2026, Judge Moore entered final default judgment in Plaintiff's favor and against Defendants on Counts III through XI, awarding $132,200.00 in compensatory and punitive damages. *See* ECF No. [28] at 10–11. That judgment awards "some relief" on the merits sufficient to confer prevailing-party status. *See Bhogaita*, 765 F.3d at 1291. Plaintiff is, therefore, entitled to a reasonable award of attorney's fees and costs under 42 U.S.C. § 3613(c)(2) and Florida Statute § 760.35(4).

### B.   Lodestar Calculation

The Court next turns to determine the reasonable amount of recoverable attorney's fees and to do so, it must calculate the reasonable hourly rate and the number of hours reasonably expended on the litigation. *See Bivins*, 548 F.3d at 1350. Starting first with determining the reasonable hourly rate, Plaintiff's counsel, Nolan Klein, Esq., requests $550 per hour. *See* ECF No. [29] at 2; ECF No. [29-1] at 1. Mr. Klein has been a member of the Florida Bar since 2003 and has practiced in the Southern District of Florida since 2004, giving him more than twenty years of federal court experience. *See* ECF No. [29-1] at 1. He has represented clients in hundreds of disability rights matters on both the plaintiff and defense sides and has handled nearly one thousand cases in federal court. *Id.* He serves as a faculty member for Lawline, has taught continuing legal education courses on disability law approved for credit by multiple state bar associations and taken

by thousands of attorneys nationwide, and has appeared as a legal analyst on national news programs in connection with his disability law practice. *Id.*

In further support of the requested rate, counsel cites *Chavez v. The Fifth Labor, LLC*, No. 22-CV-01055, 2023 WL 3647912, at *3 (S.D.N.Y. May 25, 2023), in which the district court determined that a rate of $500 per hour was reasonable for Mr. Klein's work on a comparable disability civil rights matter. *See* ECF No. [29] at 3. Since that decision nearly three years ago, Mr. Klein has continued to expand his federal court practice across multiple jurisdictions. *See* ECF No. [29-1] at 1. The Court's own familiarity with prevailing market rates in this District further confirms that a rate of $550 per hour is reasonable for an attorney of Mr. Klein's experience and specialization in federal disability and fair housing law. *See Loranger*, 10 F.3d at 781.

The applicable *Johnson* factors further confirm the reasonableness of the rate. This litigation presented multi-count claims under parallel federal and state fair housing statutes requiring specialized knowledge of disability discrimination law. *See* ECF No. [1] at ¶20; ECF No. [27] at 12–13; *Johnson*, 488 F.2d at 717–19 (identifying as relevant factors the novelty and difficulty of the questions presented, the skill requisite to perform the legal service, and the experience, reputation, and ability of the attorneys). Plaintiff obtained an excellent result: a $132,200.00 judgment on nine of eleven counts, including a $100,000.00 punitive damages award to deter willful disability discrimination. *See* ECF No. [28] at ¶¶3–4; *Johnson*, 488 F.2d at 717–19 (identifying the amount involved and results obtained as relevant factors). On balance, the *Johnson* factors are consistent with the rate requested, which the Court finds reasonable.

Turning next to the number of hours reasonably expended on the litigation, Plaintiff's counsel requests fees for 37.7 hours billed solely by Mr. Klein between January 15, 2025 and December 30, 2025. *See* ECF No. [29-1] at 3–8. No paralegal or other non-attorney time is

included in the request.  *See* ECF No. [29] at 2.  The Court's review of the billing entries reveals that they are reasonable, appropriate, and sufficiently specific for the Court to determine the task completed as compared to the amount of time spent on each individual task.  The pre-filing and immediate post-filing phase — encompassing initial client intake and review of the FCHR's reasonable cause findings, background research on Defendants through public dockets and Florida state databases, and the drafting and filing of an eleven-count federal complaint — is well-documented and reflects the demands of initiating disability discrimination litigation in federal court.  *See* ECF No. [29-1] at 3.  The default judgment phase encompassed substantive legal research across eleven statutory counts under both federal and Florida law, preparation of the motion for default judgment and Plaintiff's supporting sworn affidavit, and all related tasks.  *Id.* at 5–7.   The remaining time reflects periodic client communications, case monitoring, and preparation of the instant fee application.  *Id.* at 7–8.  As Mr. Klein is the sole timekeeper, there is no issue of duplication of effort.  *See Norman*, 836 F.2d at 1301–02.  The Court identifies no entries that are excessive, redundant, or otherwise unnecessary.  *See Hensley*, 461 U.S. at 434.

Thus, the lodestar is $20,735.00 (37.7 hours at $550.00 per hour).  *See* ECF No. [29-1] at 8.  No adjustment to the lodestar is warranted.  The Court entered final default judgment in Plaintiff's favor on nine of eleven counts and awarded the full punitive damages amount she requested — an excellent result.  "If the result was excellent, then the court should compensate for all hours reasonably expended." *Norman*, 836 F.2d at 1302.  A downward adjustment "is merited only if the prevailing party was partially successful in its efforts." *Bivins*, 548 F.3d at 1350–51.  No such limitation applies here.  The Court accordingly awards Plaintiff her attorney's fees in the full lodestar amount.

CASE NO. 25-CV-20455-MOORE/Elfenbein

### C. Costs

Plaintiff seeks $533.16 in litigation costs, comprising: (1) a $405.00 filing fee; (2) a $60.00 service of process fee for Defendant Rodas; (3) a $60.00 service of process fee for Defendant B&J Services; and (4) $8.16 in certified mail costs incurred in connection with the substitute service proceedings. *See* ECF No. [29-1] at 8. Filing fees and service of process costs are recoverable under 28 U.S.C. § 1920(1) and the Fair Housing Act's costs provision. *See* 42 U.S.C. § 3613(c)(2); Fla. Stat. § 760.35(4); 28 C.F.R. § 0.114. The certified mail expense was a necessary component of completing substitute service on the corporate Defendant and is likewise recoverable. All requested costs are approved.

## IV.   CONCLUSION

For the reasons explained above, I respectfully **RECOMMEND** that the Motion, **ECF No. [29]**, be **GRANTED** and that Plaintiff be **AWARDED $21,268.16** in attorney's fees and costs ($20,735.00 in attorney's fees and $533.16 in costs) against Defendants jointly and severally.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable K. Michael Moore, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

CASE NO. 25-CV-20455-MOORE/Elfenbein

**DONE AND ORDERED in** Chambers in Miami, Florida on, April 21, 2026.

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc:  All Counsel of Record

12